Good morning. May it please the Court. My name is Chris Evans and I represent the appellant, 1801-1825 Morton LLC. With the Court's permission, I'd like to reserve five minutes for rebuttal. You may do so. Just watch the clock. Thank you, Your Honor. The appellant in this case is a Section 8 property owner who relied upon a longstanding HUD regulation in order to end its participation in the federal voucher program. The appellees in this case are tenants who filed suit to enjoin the landlord from relying upon HUD's regulation. Ultimately, the District Court struck down HUD's regulation as arbitrary and capricious. The regulation that the District Court struck down is located at 24 CFR 982.310D1 subsection 4. It is often referred to as HUD's opt-out regulation because it allows Section 8 owners to opt out of the federal voucher program for legitimate business or economic reasons. One of the business reasons specified by the regulation and relied upon by the owner is the landlord's desire to obtain higher rent in the non-subsidized market. Now, the regulation is vital to the success of the Section 8 voucher program. It is a regulatory incentive that has been in place nationally for 25 years. It strikes a bargain between the federal government and private property owners who are considering whether or not to join the voucher program. It tells property owners up front that if you agree to submit your property to our regulations, if you agree to add your property to the nation's stock of affordable housing, if you agree to subject your property to federal rent restrictions, then we will let you out of the program after the initial term if you can justify legitimate business or economic reasons. May I ask a very dumb question? Once you opt out of the federal program, the landlord is subject to whatever controls exist locally, right? That is correct, although in the state of California, there is a vacancy decontrol law which is governed by the state, not by the city of L.A. And so the state has said under certain circumstances, if you opt out of the program, you're able to re-rent the unit at market. In other circumstances, depending on what the tenancy is created... just like any other landlord, a Section 8 or not Section 8 landlord, owning property in Los Angeles. That is correct, Your Honor. So why then is there preemptive effect to this particular regulation? Well, the entire... And why doesn't, in effect, the answer follow from T.O.P.A. from TOPA and from Klugman in the First Circuit and the Federal Circuit's recent cases, all of which articulate that rationale? Well, the difference in the T.O.P.A. case is that the owner was prepaying its mortgage and attempting to get out of the rent control restrictions as a termination of the mortgage. What we are trying to do here is get out of the federal program itself and all the regulatory burdens that it imposes. In addition, we're trying to get out of the federal rent restrictions. Now, once we do that, for certain tenancies, we will be able, under California law, to raise the rent to market. Once we do that, then you are correct, and we are subject to rent control. But by relying upon this regulation, we have done two things. One, we've opted out of a burdensome federal program, which the Federal Government gives us the right to do. And, two, we are able to reestablish market rents for the property, neither of which we're able to do under this program. Okay. So again, I mean, I'm sorry for being so dumb about it. That's okay. This is complicated stuff. So what is there about the Los Angeles rent control, you can't evict to get higher rent ordinance, that prevents you from opting out of the federal program? Sure. That's an excellent question, Your Honor. If I may, by way of a little background, and I'll start off with the HUDS regulation, and then I'll go into the LARSO. It's critical to note that HUDS regulation is the only method provided for by the Federal Government for voluntarily opting out of a Section 8 program. There's no alternative to this regulation. According to federal law, the only way the owner can terminate the Section 8 contract and exit the program is by first terminating the underlying lease. Once the lease has been terminated, then the Section 8 housing assistance payment contract is terminated, and the owner is no longer subject to the voucher program. Now, what Los Angeles did in July of 2006 is it specifically targeted the voucher program for regulation. What it stated was that the voucher program is now subject to our 12 municipal reasons for eviction, and none of those municipal reasons recognize HUDS legitimate business or economic reasons for terminating tenancy. So essentially what Los Angeles has done is it's declared a misdemeanor for any Section 8 owner to rely upon HUDS regulation in order to terminate an underlying Section 8 lease. Because, again, it's not acknowledged as one of the 12 grounds for termination of tenancy. And, Your Honor, if I may, therein lies the conflict between the two statutes. Personally, I can't say it any better than the district court. In finding conflict preemption, the lower court stated, and I quote, because the LARSO takes away a right specifically granted by the HUD eviction regulation, LARSO stands in actual conflict with the HUD regulations. And that's the only way you can opt out. You can't opt out by doing anything else. Because it seems to me on its own, at least on one take, you can comply with both just by not electing to opt out by terminating the underlying lease for the reason given, but rather for a different reason that would be consistent both with Los Angeles's ordinance and the Federal. And that's the problem. We've tried every way under the sun to get out of this program. The first way to do this is by attempting to give a 90-day notice to the housing authority saying we're just not going to participate in the housing assistance payment contract, but we'll keep the underlying tenancy in place. And the housing authority said, no, you can't do that. You have to terminate the lease. But to answer your question specifically, no, Your Honor, there is no voluntary way under rent control for the owner to terminate the lease. It has to be based upon something the tenant did or failed to do. Or at the end of the lease. Not at the end of the lease either, Your Honor, under rent control. Under the state statute or the federal statute? Under the local rent control ordinance. There is no grounds for termination of tenancy at the expiration of a fixed-term lease. Essentially what the LARSO does is it creates a perpetual tenancy. In other words, as long as the tenant complies with the lease, there are no grounds for the owner to say, you know what, I just don't want to continue this tenancy. It has to be continued year in and year out. Now why is that in conflict with the HUD rules? Because HUD specifically states that if you have a legitimate business or economic reason for no longer participating in our program, you can terminate the Section 8 lease. So HUD applies nationwide. Correct. Yes, Your Honor. It's our position that HUD's regulation applies nationwide. But the agency intended for this to apply nationwide. And I'll give the Court four reasons or three reasons. Okay. Just follow along with me for a second. Yeah, you have to bear with me. I'm kind of suffering from a cold. So HUD applies nationwide. And it applies to various municipalities. And it does list as one in its regulations, one basis for good cause is raising rents. Okay. Why can't individual municipalities, that's not a mandatory requirement, why aren't municipalities across the United States, Los Angeles here, maybe San Francisco up north, free to give greater protection to the low-income affordable housing renters who this Act is designed to help than what is discretionary under the Act? Two reasons, Your Honor. First, the first reason, it would destroy the incentive that HUD has created to bring private owners into the program. What owner in their right mind would enter into a perpetual federal tenancy when the federal government is capable of restricting the rents? In other words, if I join this program right now and the federal government says your rent's at $1,000, but by the way, we'll let you get out if, say, market rent goes up to $1,500, and you can't get that through this program, I join the program under those circumstances. But if the federal government says, you know what, the city's free to say any time you're in the line that you just can't get out and you're going to have to permanently accept what the federal government is offering you. But the problem here is that the federal government did not expressly preempt the cities from being more protective of low-income renters. And so, in fact, it doesn't speak to it. So I understand what you're saying about creating incentives, but this happens to be the system that we're working with here. Well, I would disagree that HUD did, in fact, in its commentary expressly state an intent that it wanted its regulation to apply nationwide and be binding in the state court judicial proceedings. And so when this regulation was adopted in 1984, it clearly stated in its commentary that its good cause regulations are to be binding in the state court judicial proceedings. The system set up by HUD has always been as follows. Federal law controls the substantive grounds for terminating a lease. State and local law provides the procedural grounds. This is a system that has been followed by Congress and HUD for the past 25 years. And it makes perfect sense. If you look at the federal good cause grounds for termination of tenancy, each and every one of them are designed to protect a particular beneficiary, not just tenants. So, for example, some of the federal good cause grounds promote federal policies, such as no renting to an individual who is fleeing to avoid prosecution. One strike and you're out drug use policy. A city could not come around and say, you know what, you can't evict if an individual has drugs. Federal law said we can. We don't want to give our rental assistance to individuals who engage in that behavior. Other good cause provisions are designed to protect tenants. For example, the landlord is prohibited from terminating tenancy when a housing authority fails to pay its portion of the rent. A city could not come along and say, you know what, we're going to give you the right to evict anyways, regardless of what the feds say. Likewise, with this regulation, what the feds have said is that you as an owner have a right to opt out of the program for legitimate business and economic reasons. And the city cannot come along and say, you know what, we're going to take that right away from property owners. Especially in a case like this where when my client served his notices to opt out of the program in 2006, the LARSO regulation was not even in place. They waited until a month after these notices were served and then stated, sorry, you can't do that. Isn't there a distinction between the enhanced voucher renters and the regular renters? Because if your reason is that you, or your client's reason is that you want to raise rents, the government will step up and pay the increased rent under the enhanced voucher program, right? That is correct. There is a distinction between the enhanced and the standard voucher program. But that distinction — So a lot of your arguments are applied to the enhanced vouchers. Well, that's not entirely true. First of all, the event that triggers the enhanced vouchers was a voluntary event to begin with. In other words, the landlord still had to voluntarily join the federal housing program that triggered the enhanced voucher statute to begin with. But you are technically correct in that my client did not have the option of accepting enhanced vouchers up front. But if you look at the plain language of the enhanced voucher statute, it says clearly that enhanced vouchers shall be treated as standard vouchers with four exceptions. And none of those exceptions govern the termination of tenancy. And so Congress clearly stated that you can terminate, with respect to the termination of tenancy, you can terminate an enhanced voucher tenancy on the same basis as you can terminate a standard voucher. That includes, under HUD's definition, the right to terminate tenancy in order to raise rent. The enhanced voucher statute only deals with the creation of the enhanced voucher tenancy. If everything was working properly, the federal government should have bumped the rent up to market. My client would have no legitimate grounds for bringing this action. But what we're dealing with here is an enhanced voucher tenancy or a set of tenancies that began more than ten years ago. And our argument and our notice is alleged that the federal rents have failed to keep pace with market. And that ten years down the line, we do have the right to terminate tenancy if the rent paid by the federal government is not sufficient. Are you sure that's accurate in today's economic environment? You know, I thought about that a lot before, and I wanted to give the Court an honest answer. And I work in the landlord-tenant field. Quite frankly, right now, the Section 8 program is looking beneficial because it's a guaranteed rental stream from the federal government. So tenants that are dislocated may have an easier time right now getting private owners to rent to them under the Section 8 program. But, and again, this is the huge issue presented by this case, if L.A. is allowed to say once you're in, you can never get out, then who is going to join the program from this point forward? I know of none of my clients who are willing to join a perpetual federal program. Counsel. Yes. Judge Collins seemed to indicate that the program is subject to the good cause reg. But then, if I understand her correctly, she's saying that the reg exceeds the statutory allowance, suggesting perhaps that it arbitrarily stands in the way of local government's policies. What's your response? Well, the District Court did a very interesting thing. I think it threw both of us, both sides, for a little bit of a loop, correctly analyzed the preemption issue, but then found that HUD overstepped its regulatory authority. I think the timeline best explains our position. Our position is, of course, that under Chevron, HUD's regulation is valid. And it's valid because Congress expressly approved the termination of voucher contracts for business reasons. But let me go over just a really brief timeline of why I think this regulation is valid under the standards set forth in Chevron. In 1981, Congress enacted the other good cause provision, essentially stating you can only terminate a tenancy, a Section 8 tenancy, for three federal reasons. In 1984, HUD defined that term, other good cause, to include business or economic reasons, such as the desire to obtain higher rent in the non-subsidized market. Now, in 1993, Congress expressly authorized the termination of voucher contracts for business reasons. This shows that at least one of the issues addressed in this Court under the Chevron standards has already been decided, that Congress has authorized termination of tenancy for business reasons. Now, in 1998, Congress merged the certificate and the voucher programs together into the current program. When they did this, they pulled the other good cause provision word from word, word for word, from the 1981 statute into the 1998 statute. This is 14 years after HUD already defined other good cause to include business or economic reasons and five years after Congress had authorized the termination of tenancy for business or economic reasons. One year later then, Congress incorporated other good cause into the enhanced voucher statute. So what we have here is Congress, knowing that HUD had already defined other good cause, incorporating other good cause into both the enhanced vouchers and the standard vouchers. So I find it very difficult for the court's position, the district court's position, to be supportive that somehow HUD's definition of other good cause was arbitrary and capricious or violated any reasonable interpretation of the standard. The fact of the matter is Congress used HUD's definition of other good cause and inserted it into the 1998 standard voucher law and into the 1999 Enhanced Voucher Act. Counsel, you're down to about three minutes. And with that, I'll reserve the remaining two minutes. Very well. Thank you. We'll hear from the other side. Good morning, Your Honors. Michael Soloff, and I will be presenting the argument on behalf of all tenants on all issues this morning. Very well. Your Honors, I think as you approach what is a very complicated web of statutes, regulations, and legal issues, that you must keep in mind what program you're talking about, what statutory provision you're talking about, and what is the inquiry the court must make. There are two different programs that you're dealing with today, the Enhanced Voucher Program and the Standard Voucher Program. And in a moment I'm going to follow up on a question Judge Wardlaw asked about the distinctions in terms of the argument that counsel made. Well, does the distinction make any difference so far as preemption is concerned? Yes, Your Honor. Well, it doesn't in the sense that I don't think either one is preempted. It preempts the statute. Yeah. And I understand your statutory base, your linguistically based argument on the statute. But I'm just asking for preemption purposes only, does it make any difference? It does for this reason, Your Honor. What you heard this morning was that the argument for preemption is that HUD supposedly has a policy that in order to attract owners into the program, it's necessary to preserve the right to opt out in order to increase the rent on the unit. In the Enhanced Voucher Program, Congress has stated in the text of the statute that it's the same as the regular voucher program, except that these tenants have a statutory right to remain in the property. But you're also subject to the good cause regulation. Are they not? No, Your Honor. It says that there's a general good cause requirement in the statute which says repeated violations of lease, state and local law, or other good cause undefined. And then that's part of the regular voucher program. Then the statute says that that has been modified to the extent that there is a right to remain. Now, we're not disputing that that right to remain is subject to the general statutory good cause. Well, that's the point. But it can't be one that's based on a desire to attract owners into a mandatory program. Well, wait a minute. If it's subject to the good cause provision, that is within HUD's ability to define, is it not? Your Honor, it is. And I guess there are two points I need to make. The first is there's never been any notice and comment rulemaking by HUD applying the regulation we're discussing to the enhanced voucher program. In fact, what little guidance there is, is in the HUD guidebook, it doesn't make any reference to its existing regulation. And why should it make any difference? Why should the existing regulation make any difference? Why should the program? I guess it's the same question as Judge Reimers. I don't understand your argument to try to distinguish between the two programs. They're both subject to the good cause provision, are they not? They're both subject to the statutory good cause provision. All right. Except to the extent that there has to be some meaning to what Congress put in place about the right to remain. Okay? What the right to remain means is that when, for example, when HUD employees But Congress, as Mr. Evans pointed out, did not amend the good cause provision. That's correct, Your Honor. It said that there's a statutory right to remain, and that's what is different between this program and the standard voucher program. The statutory right to remain has been consistently interpreted as meaning that landlords have no option, for example, when the prepayment occurred in TOPA equities, that this Court looked at there, that the landlord had no choice but automatically had to go into the enhanced voucher program. Since it automatically had to go into that program, to say that there can be a policy from HUD to interpret that provision of other good cause to create an incentive to attract ownership to that program makes no sense. There is no reason to have an incentive because it's a mandatory program. In addition, it has the effect of denying the statutory right to remain in jurisdictions such as Los Angeles that has a rent control ordinance and which is subject to California vacancy decontrol. And the reason for that is that the restriction here, there is no federal restriction on rents here. That's a mischaracterization, with all due respect, by opposing counsel. All the federal statute says is that rents must be reasonable, which means comparable to what's charged for similar units in the same locality. And Congress expressly stated that that's subsection 010 of the Section 8 statute, 010A. And in 010C, Congress specifically said, and if it's a rent control unit, the proper comparison is to other rent control units, and if not, then you should use unassisted units. So the only restriction this program itself puts in place is that you have to be comparable to what you're charging to unassisted tenants. And it specifically recognizes, Congress specifically recognized that it could be subject to rent control, as has HUD itself. So if you're going to say that what they want to do here, which is to take advantage of vacancy decontrol and raise the rent beyond what the local rent control will allow, you are automatically taking away from enhanced voucher tenants their right to remain because by definition over time, although with current market conditions that might not be true, but in normal times, the whole purpose of rent control is to keep the rent increases reasonable for existing tenants. And then at the end of the tenancy, you can raise it up to wherever the market is. But if you're going to say that while that process is going on and the market's getting higher, that that automatically gives you a right to evict the enhanced voucher tenants you have turned their right to remain that Congress put in place specifically to allow these long-term tenants to remain in their homes into an illusory guarantee. That is not permissible. And with all due respect, HUD has not done that. There is no notice and comment rulemaking applying this regulation to the enhanced voucher program. So the essence of your argument is that HUD should have done something to amend its good cause regulation in the context of this particular program? HUD has a good cause regulation that was in place for a different program, and it took no action. The only action it took was to issue its guidebook, which in the recent D.C. Circuit opinion in Feimster, as they point out, specifically says that owners who are opting out under the provisions of this guidebook, which were not in place at the time TOPA opted out, but which do apply, you have to certify that you're not going to terminate tenancy except for good cause under state or local law. So HUD's expressly recognizing the operation of state and local law as an additional restriction. Now, the same thing is true in the regular voucher program. Let's be very clear about what this regulation says. This regulation does not say landlords must have the right to opt out of the Section 8 program based on the desire to raise the rent. What it says is, implementing the statute itself, is that a landlord may not terminate a tenancy except for certain grounds, and this is one of the grounds that HUD is saying is not subject to the nationwide minimum federal good cause standard. In fact, it doesn't even say that this operates directly. It says that the lease between the landlord and the tenant must include a provision saying this. Now, HUD was fully aware of the fact that there are eviction controls and rent controls. In fact, the very eviction control that's at issue today, which is an eviction control to prevent termination of tenancies as a way of circumventing local rent control, is precisely what HUD was talking about in connection with the insured mortgage program for this court in Topa Equities in 24 CFR 246.1B. And there, they expressly preempted that. Now, I'm not arguing that HUD is obliged to do an express preemption if there's in fact a conflict. What I am telling you is that in 1975, because it was engaged in the Cartman litigation in Boston that Your Honor referred to, HUD was keenly aware of the fact of rent control and keenly aware of associated eviction controls, and it chose in that case to expressly preempt it. They then went to Congress and said, we think that the way to encourage owner participation in these programs is to make assisted tenancies and unassisted tenancies indistinguishable for purposes of eviction. And that was their policy that they advocated to Congress. Now, we're not putting forward that to argue that's Congress's intent. Obviously, an unenacted bill isn't Congress's intent. But this what HUD is proposing to Congress is certainly informative of what HUD's view was of the proper method by which to encourage participation. We do not dispute that the purpose of this regulation's exceptions was to avoid discouraging participation. But HUD had a very specific methodology in mind, and its concern was that it not be significantly more difficult to evict a assisted tenant in the majority of jurisdictions in the United States where there are no eviction controls and where the Federal good cause standard is actually a higher standard. That's what they were concerned about. Because if I'm a landlord in one of those jurisdictions, I'm saying, why should I rent to a Section 8 tenant if it's going to be a lot harder to get rid of them at the end of the lease? Or if I get a new offer that's for a higher rent, why should I go with them? And they couldn't eliminate the Federal good cause altogether, because despite their proposals in 1978 and 1981 to make the law exactly the same, Congress wouldn't go along with that. They wanted a minimum nationwide standard of protection for the tenants. So Counsel, put this in the context of the Delaquesta case. Yes. Okay. In Delaquesta, Your Honor, the Court didn't simply say that because the Federal Home Loan Bank Board has given an option to the regulated banks to use the due-on-sales clause, that that automatically leads to preemption. What the Court said was that that option is there. Let's look at what was the agency's policy behind it. And they went through. And what the agency expressly stated there, the policy was, is that we think that the financial solvency of these banks is dependent upon their having this option, and that if they don't have that financial solvency, there will be all sorts of negative consequences to the home loan market. But that has significant parallels to the policy reasons for addressing property owners' concern about a good cause termination provision rather than a no cause 30-day notice, doesn't it? Your Honor, it has this in common. Here, let me take it the other way, if I might, what the distinction is. In Dela Cuesta, it didn't matter whether the Federal Government precluded the banks from using the due-on-sales clause or the state or a locality did. It had exactly the same effect. And the effect was threatening the financial solvency of those institutions, at least according to the Federal Home Loan Bank Board. Here, HUD has never said that the purpose of this is to allow landlords to maximize the amount of rent that they can get. What it was concerned about was the differences between background State and local law and imposing an additional burdensome Federal good cause requirement, and that that difference, the Federal law being more restrictive, would be a disincentive to participation. That is not implicated where local law is more protected and they're exactly the same. So there's no inconsistency if the State does that. Well, sure, that's your conclusion based on it. But if the Federal law said, just crystal clear, good cause for termination is desire to rent at a higher rent, and Los Angeles says you can never terminate a lease because of concerns about a higher rent, that's a collision. Well, Your Honor, I think this brings us to something that's very important here today, which is, as I said, what is the question you're asking? And the question you're asking yourselves is, has the landlord provided you with clear evidence of a conflict between the equal application of Los Angeles' rent control ordinance and eviction procedures to assisted and unassisted tenants? Does that, do you have clear evidence that that significantly harms the policy that HUD has in its regulation as it applies? Well, that nicely skirts my question. Well, Your Honor, let me tell you. So, I mean, what is the answer to my question, which I will concede is a little clearer than the question we've got in this case? But if the Feds actually clearly say good cause is wanting to, an ability to get higher rent, and Los Angeles says you can never, it's not good cause, it's not any cause at all, you simply can't go there, that's a collision. And the reason I'm struggling with your question is, if you're saying, if you're saying that there is a clear determination that it's important in rent control jurisdictions that landlords be able to raise the rent in excess of the local rent things, then there would be no question, if HUD took that position, it would at least be preemptive, and then we would have to go to the question of whether that's consistent with the determinations that Congress made in 1998 when it created the current voucher statute. So if that's Your Honor's question, if you're simply saying that the fact that Los Angeles is prohibiting something that a Federal statute or regulation permits, that doesn't create preemption. And in fact, HUD. Because, because, because. It doesn't for two reasons. First is that this Court has held in Chevron, in the Hammond case, and also the First Circuit held in the Cardman case when it said that the fact that HUD permits rents at a certain level and the City of Boston comes in and says the rents can only be at this level, at page seven of that decision, the Court says that unless you find as a policy this was meant to be the minimum reasonable return on that program, if HUD didn't do that, the mere fact that the City is prohibiting what HUD allows doesn't create preemption. In addition to the case law, HUD itself has rejected that premise in the voucher program. HUD had a provision that went in place in 1995 talking about discrimination against, discrimination requirements and that participations in the program must not discriminate against other participants. And they only referenced certain Federal anti-discrimination laws. A comment came in and said, well, what about State and local anti-discrimination laws, many of which, as in many cases we've cited, Your Honors, point out, specifically preclude, prohibit discrimination against Section 8 recipients on the ground that they're Section 8 recipients and have the effect of compelling landlords into the program in the first place because they're not allowed to deny rent, to rent a unit to someone simply because they're a participant in the program. And HUD said, we don't need to say that, but of course, State and local governments are free to do that. There was a series of additional State High Court cases, again, in New Jersey and Connecticut, holding that those types of regulations, State law regulations appropriately compel landlords into the program. And in 1999, HUD expressly put in place in 24 CFR 982.5 3D the statement that they do not preempt such laws. So HUD has rejected any interpretation of this statute that would say that merely because State law operates to compel owner participation under circumstances where Federal law would not compel it, that that's automatically preempted or automatically in conflict, that's been rejected. And this Court would owe Chevron deference to that determination. So you then would have to look at, okay, how about this specific law? Does this specific law conflict with the local regulation? Now, counsel brought up the issue of crimes and drugs. That's a different provision of the statute. That's subsection D of 07. We're talking about subsection C of 07, which was put in place at a different point in time that has a very different policy behind it. And whatever conflict there might be, and there are some cases that have found conflict, although not in this program, between local eviction controls and that has nothing to do with this. Well, what if the Fed said can't evict and the city says can't evict? Nearly the fact that it says can as a permissive does not automatically result in preemption. That is precisely what this Court found in Chevron and Reed-Hammond, what the First Circuit found in Carbon and what this Court found in Spice. So in order to have an effective policy, the Feds would have to say can't not convict, evict? I mean, would they have to say upside down and inside out? They would have to say that a landlord must have the right to evict under these circumstances. That's not what the regulation states. It's not what the statute states. Okay. So now we're not talking about principle. We're talking about the actual language. Is that where you're at? I mean, is your position that this language is squishy and therefore it's not preemptive? Our position is that there's no clear evidence of a conflict here. Number one, the regulation itself doesn't create a conflict. It merely says that the lease has to have a provision prohibiting landlords from terminating except on certain grounds. And that by itself is not a conflict. Well, what it says, if you're looking at 1437F07C, the contract shall provide that the owner shall not terminate the tenancy except for other good cause. And, of course, good cause is defined by HUD. It certainly has been defined by HUD in the Standard Voucher Program, and no one's disputing it. What it doesn't say, and it doesn't say that they must be allowed to terminate for other good cause. It says that these are the only grounds on which you can terminate. And so the mere fact that Federal law doesn't prohibit termination on other good cause, which HUD has defined in a certain way, at least in the Standard Voucher Program, does not in and of itself create clear evidence of a conflict. One has to go further than that and find that there's a policy conflict. That's the Spreizman case. The Coast Guard decided that it wasn't going to require propeller guards in motorboats. They made that determination, but that didn't preempt state and local authorities from adopting them. And what the Supreme Court said was that the proper mode of analysis is to look and see, first of all, did they make an express statement that they intended to exclude state and local regulation? No such thing occurred here. And secondly, is the policy analysis that they went through one that would be injured if you allowed states and localities to impose restrictions in their local jurisdictions? Thank you, Counsel. I think I have 30 seconds left. No, no. You've gone over time 30 seconds. Oh, I'm sorry, Your Honor. Okay. Thank you, Counsel. Your time has expired. Do you have some reserve time? Yes, I believe I have two minutes and 45 seconds. With respect to the issue of whether or not HUD has expressly stated that it wants its regulations to apply in state court, I'd like to read the HUD commentary. This is immediately following the HUD good cause regulations. I quote, the substantive federal good cause requirements under the statute and the HUD regulation are binding in state court judicial proceedings. Later on in the same commentary, HUD made the same statement, and I'm going to quote it again. A legal aid comment recommends that the lease should specify that the landlord has the burden of proving good cause. This regulation has not been adopted. While the substantive good cause requirement is controlled by federal law, the procedural incidents of the possessory action should be left to the determination under state law. In the reading from commentary, how does that reconcile with the actual statutory provision in section 1437F07E that provides that the lease shall be consistent with state and local law? If you read the district court's opinion on that as well as a brief, those two coincide perfectly, because what the federal government is saying is the grounds that you always must state good cause grounds when you terminate the lease, but any relief shall be consistent with state and federal law. There's a distinction there between the grounds used to terminate tenancy, which is federal grounds, and the relief required to regain possession, which is the state possessory eviction action. So the distinction is very clear. It's a distinction that Congress itself has adopted. In addition to But the state said here that procedure is not available in these circumstances. The procedure that that statute is referring to is the civil procedure for regaining possession. In other words, if the state states that you must serve a 90-day notice or a 120-day notice or that your termination notice has to contain a particular language or you have to wait 10 days after the tenant is served before you can enter default, that relief has to be consistent with state law. That is a civil procedure type of relief. In other words, the substantive basis for terminating the tenancy are the grounds for termination defined by federal law. The procedural method by which you regain possession, you file a UD, you serve a certain type of notice, you wait a certain amount of time for a lockout, that is governed by state law. And that has always been the distinction. In fact, it's been the distinction from the original statute, which states that you cannot terminate tenancy unless you specify one of the three federal grounds. By saying this, the Congress has essentially stated that it's going to preclude any landlord from walking into court and stating we're going to evict you based solely upon a state law ground. They have to cite and prove a federal ground. And with that, I am out of time. May I ask a question on my time of both counsel? And here's the question. Should we solicit input from HUD? In several Supreme Court opinions in Spreetsma and Guyer, the Court went out of its way to comment on the value of input in the litigation from the agency. So I would just appreciate each of your views on that. With respect to soliciting comments from HUD, I would have no objection to that. I'm fairly confident that at least HUD's initial position on the standard vouchers is pretty clear, that you have the right to exit the program for legitimate business or economic reasons. I would be interested in seeing HUD's take on that position. And I take it HUD has not played any role in this case up until now? No, it has not, Your Honor. Very well. Nobody invited it to. We have not. I don't think either side has approached HUD for amicus briefs or anything like that. All right. Very well. Counsel, Mr. Sola? Just to respond to the question, we, too, would fully support soliciting HUD's input in this case. Thank you for your views. Very well. Thank you very much. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Rymer, Wardlaw